```
               UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS


                                    )
UNITED STATES OF AMERICA ex rel.    )
CHRISTOPHER CRENNEN,                )
                                    )
              Plaintiff,            )
                                    )
     v.                             )  CIVIL ACTION NO. 06-10546-PBS
                                    )
DELL MARKETING L.P., et. al.,       )
                                    )
              Defendants.           )
                                    )
```

**MEMORANDUM AND ORDER**

April 27, 2010

Saris, U.S.D.J.

## I. INTRODUCTION

In March 2006, relator Christopher Crennen filed a qui tam complaint under seal charging thirty-two companies with violating the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. Crennen alleged that various information technology vendors had misrepresented and certified falsely that their products complied with the Buy American Act ("BAA") of 1933, 41 U.S.C. §§ 10a-10d, and Trade Agreements Act ("TAA") of 1979, 19 U.S.C. §§ 2501-2581, in order to list those products for sale on a federal procurement website. This Court unsealed relator's complaint in May 2009 and, in July 2009, the United States declined to intervene in the case. (Docket No. 22.) Crennen's original counsel subsequently

withdrew, and on September 18, 2009, new counsel filed an amended complaint, reducing the number of defendants to ten.[1]

Each of the remaining defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).  After hearing and consideration of the parties' filings, the defendants' motions to dismiss are **ALLOWED**.

## II.  FACTUAL BACKGROUND

With all reasonable inferences drawn in relator's favor, the complaint alleges the following facts.

The General Services Administration ("GSA") is a federal agency charged with assisting other agencies in procuring products, including computer equipment.  To facilitate transactions, the GSA has an online shopping and ordering system called GSA Advantage!.  Vendors who seek to offer products through the GSA Advantage! website must certify that their products comply with both the BAA and the TAA.  Essentially, those statutes limit a procuring federal agency to considering offers of products from "designated countries" only, a label that excludes China, India, Indonesia, Malaysia, Taiwan, Thailand, and others.  Products manufactured in non-designated countries cannot

---

[1] On January 22, 2010, Relator filed a notice voluntarily dismissing defendant Dell Marketing L.P. from the case.  The remaining nine defendants are Hewlett-Packard Co., Capitol Supply, Inc., CDW Government, Inc., Force 3 Inc., GovConnection Inc., GTSI Corp., Synnex Corp., Unistar-Sparco Computers Inc., and Westwood Computer Corp. (n/k/a EMTEC Federal, Inc.).  (Am. Compl. ¶¶ 6, 7, 9-15.)

compete for federal procurement and, therefore, cannot be listed for sale on the GSA Advantage! website.

Each defendant has a contractual relationship with the GSA to sell its products to federal agencies through the GSA Advantage! website and has certified that its goods offered on the website comply with the BAA and TAA.  Relator alleges, however, that the defendants have offered noncompliant products for sale on the website.  He bases this claim on personal examination of the country of origin labels affixed to various computers and computer peripherals (e.g., monitors, keyboards, and mice) at the United States District Court for the District of Colorado clerk's office and law library and at the Environmental Protection Agency ("EPA") Technical Library in Denver, Colorado. (Am. Compl. ¶ 34.)  The great majority of these devices were made in non-designated countries, usually China.  (Id.)  However, relator does not specify which defendant, if any, manufactured the products he observed.

Relator examined the countries of origin listed for defendants' products on the GSA Advantage! website and compared this information with the countries of origin listed on the same products at retail stores "such as CompUSA, MicroCenter, Apple etc."  (Id. ¶ 35.)  He contends that defendants sold products "with identical manufacturer part numbers" at retail stores and on the GSA Advantage! website.  (Id.)  He found that, when sold at retail stores, the products indicated that they were

manufactured in non-designated countries, but were listed on the GSA Advantage! website as being produced in designated countries.

From these facts, relator surmises that the defendants "knowingly submitted or caused to be submitted false and fraudulent claims for payment to be submitted [sic] to the United States Government by selling products from non-designated countries through the GSA Advantage! Website," "knowingly made, used, or caused to be made or used, false records or statements to get the sale of products from non-designated countries through the GSA Advantage! Website paid or approved by the United States Government," and "knowingly made false certifications that they had complied with the BAA and TAA through their participation in the GSA Advantage! Website." (Id. ¶¶ 39-41.)  Relator asserts that the "sale by the Defendants of each item of computer equipment and other products whose origin is falsely represented constitutes a false claim in violation of the FCA," that "the listing by the Defendants of each item of computer equipment . . . which falsely represents the origin of the product is a false record or statement to get a false or fraudulent claim paid or approved by the Government," and that "the listing . . . of each item . . . which falsely represents the origin of the product is a violation of the . . . certification of compliance with the BAA

and TAA that the Defendants are required to make in order to receive payment for the product."[2]  (Id. ¶¶ 43-45.)

### III.  STANDARD OF REVIEW

Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  The First Circuit has held that Rule 9(b) applies to complaints brought under the False Claims Act.  United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 228 (1st Cir. 2004).  Thus, "a qui tam relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery."  Id. at 231.

In order "to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'"  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).  In considering a motion to dismiss for failure to state a claim upon which relief can be granted, courts must take as true the allegations

---

[2] Relator initially alleged that defendants "conspired to defraud the Government by getting false or fraudulent claims allowed or paid in violation of 31 U.S.C. § 3729(a)(3)." (Id. ¶ 49.)  He failed to plead any agreement between the defendants, however, and formally withdrew the conspiracy charge in his first responsive pleading. (Relator's Resp. in Opp. To Hewlett-Packard's Mot. Dismiss 9 n.5 ("Upon further consideration, Relator has decided not to pursue an allegation of conspiracy under 31 U.S.C. § 3729(a)(3). Accordingly, the Court may consider subparagraph (3) of paragraph 49 of the [First Amended Complaint] as withdrawn.").)

in the plaintiff's pleadings and must make all reasonable inferences in favor of the plaintiff. Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted). "The court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim . . . nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion." Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 244 n.3 (1st Cir. 2006).

## IV.  DISCUSSION[3]

Relator alleges that defendants violated two prongs of the FCA, which imposes liability on any person who:

> (1) knowingly presents, or causes to be presented, to
> an officer or employee of the United States Government

---

[3] Relator claims that defendants violated the BAA by selling noncompliant "computers and computer peripherals and accessories, such as mice, keyboards, and monitors." (Am. Compl. ¶ 34; id., Ex. A; see also id. ¶¶ 37-38, 42-46.) The Federal Acquisition Regulation, however, specifically exempts from the ambit of the BAA "the acquisition of information technology that is a commercial item, when using fiscal year 2004 or subsequent fiscal year funds." 48 C.F.R. § 25.103(e). The expansive definition of "information technology" plainly encompasses the devices at issue here. See 48 C.F.R. § 2.101(b). Relator appears to concede this point by declining to respond to defendants' briefing on the BAA. (Relator's Opp'n to Defs. GTSI, Unistar-Sparco, and Emtec's Mots. to Dismiss 3 n.2.) Therefore, to the extent that his claims are based on the BAA, they are dismissed with prejudice for failure to state a claim upon which relief may be granted.

>    or a member of the Armed Forces of the United States a
>    false or fraudulent claim for payment or approval;
>
>    (2) knowingly makes, uses, or causes to be made or
>    used, a false record or statement to get a false or
>    fraudulent claim paid or approved by the
>    Government . . . .

31 U.S.C. § 3729(a)(1)-(2).  As discussed in greater detail below, Congress recently amended Section 3729 in the Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617.

**A.   <u>Section 3729(a)(1)</u>**

Defendants argue that relator fails to satisfy the pleading requirements of Fed. R. Civ. P. 9(b) for FCA claims under § 3729(a)(1) because he has not identified actual claims for payment submitted to the government.  Discussing the interaction between Rule 9(b) and the FCA, the First Circuit has held that "Rule 9(b)'s requirement that averments of fraud be stated with particularity - specifying the 'time, place, and content' of the alleged false or fraudulent representations, means that a relator must provide details that identify <u>particular false claims for payment that were submitted to the government</u>."  <u>Karvelas</u>, 360 F.3d at 232 (emphasis added); <u>see also</u> <u>United States ex rel. Rost v. Pfizer, Inc.</u>, 507 F.3d 720, 731 (1st Cir. 2007) ("The particularity requirement means that a complaint must specify the time, place, and content of an alleged false representation.") (internal citation and punctuation omitted).  "Pleadings

-7-

invariably are inadequate unless they are linked to allegations, stated with particularity, of <u>actual false claims</u> submitted to the government that constitute the essential element of an FCA qui tam action."  <u>Karvelas</u>, 360 F.3d at 232 (emphasis added).  The First Circuit recently reaffirmed the application of this exacting Rule 9(b) standard for subsection (a)(1) claims in <u>United States ex rel. Gagne v. City of Worcester</u>, 565 F.3d 40, 46 n.7 (1st Cir. 2009).  To be sure, there is some flexibility in the standard.  Rule 9(b) may be satisfied even where some questions remain unanswered if "'the complaint as a whole is sufficiently particular to pass muster under the FCA.'"  <u>Id.</u> at 45 (quoting <u>Rost</u>, 507 F.3d at 732).

    Defendants argue that relator's complaint is woefully inadequate because it fails to identify a single false claim presented by any defendant or third party to the government.  Urging the Court to follow the more flexible standard, relator responds that Rule 9(b) does not always require the identification of particular claims for payment:

> In <u>Rost</u>, we noted a distinction between a qui tam action alleging that the defendant made false claims to the government, and a qui tam action in which the defendant induced <u>third parties</u> to file false claims with the government.  In the latter context, we held that a relator could satisfy Rule 9(b) by providing factual or statistical evidence to strengthen the inference of fraud beyond possibility without necessarily providing details as to each false claim.

<u>United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.</u>, 579 F.3d 13, 29 (1st Cir. 2009) (emphasis in original) (internal

citations and punctuation omitted).  Here, however, where there are no allegations that third parties presented the false claims, the more flexible standard identified in Rost is inapplicable.

Relator insists that it is plausible that each defendant made a sale because non-compliant products were on the website.  The standard is not plausibility, however, but particularity.  Relator pleads no facts to create a strong inference that a false claim was submitted.  His investigation of the technology at the Colorado District Court and at the EPA's Denver library revealed products that were made in non-designated countries.  Untethered from any other information, that fact is insufficient to establish a violation of federal law.  There is no allegation that any of the defendants sold to the Government any technology that came from a non-designated country; nor is there any allegation that the federal agencies acquired those specific products through the GSA Advantage! website.[4]  Without evidence of who sold the products relator found in the federal buildings, whether those products were sold through GSA Advantage!, or when those products were sold, these allegations that defendants must have submitted fraudulent claims is deficient.

---

[4] Defendants also point out that the TAA does not apply to products sold pursuant to contracts worth less than $194,000.  48 C.F.R. § 25.402.  Relator responds by arguing that the contracts between the defendants and GSA, which are publicly available and frequently span ten years or more, must be worth more than $194,000.

Further, relator points out that defendants sell products listed as originating in non-designated countries at retail stores, but list the same products as originating in designated countries at the GSA Advantage! website.  Articulating a theory as to how a company <u>could</u> violate subsection (a)(1), without more, is insufficient to comply with the requirements of Rule 9(b).  <u>See</u> <u>Karvelas</u>, 360 F.3d at 234-35 ("While Karvelas does describe the procedures allegedly used by the hospital to submit false claims to the United States, the alleged existence of such procedures does not permit us to speculate that false claims were in fact submitted."); <u>United States ex rel. Walsh v. Eastman Kodak Co.</u>, 98 F. Supp. 2d 141, 147 (D. Mass. 2000) ("Relator's First Amended Complaint, in essence, sets out a methodology by which the vendors might have produced false invoices, which in turn could lead to false claims.  Without citing a single false claim arising from an allegedly false invoice, Relator has not met even a bare-bones Rule 9(b) test."); <u>see also</u> <u>United States ex rel. Folliard v. CDW Tech. Servs.</u>, No. 07-2009, 2010 WL 1541224, at *8 (D.D.C. Apr. 19, 2010) (dismissing identical claim under Rule 12(b)(6) where relator merely stated that the products at issue "were incorrectly listed on GSA Advantage as originating in the United States" and did not "specifically allege that . . . [they] were actually bought by the government through that procurement portal.").

Ultimately, relator's assertion that the defendants knowingly presented false claims to the United States for payment fails both the Rule 12(b)(6) and 9(b) tests.  As such, his claims under subsection (a)(1) are dismissed.

**B.    Section 3729(a)(2)**

In the First Amended Complaint, relator alleges that defendants made false statements concerning the countries of origin listed on the GSA Advantage! website and false certifications that the goods on the website were in compliance with the TAA, in violation of Section 3729(a)(2).  (See Am. Compl. ¶¶ 49, 50, 53-56.)  Until recently amended, the False Claims Act imposed civil liability on any person who knowingly used a "false record or statement to get a false or fraudulent claim paid or approved by the Government."  31 U.S.C. § 3729(a)(2).  In Allison Engine Co. v. United States ex rel. Sanders, 128 S. Ct. 2123, 2126-27 (2008), the Supreme Court granted review to decide what a plaintiff must show regarding the relationship between the making of a "false record or statement" and the payment or approval of "a false or fraudulent claim . . . by the Government."  The Court of Appeals had held that it was sufficient for a Section 3729(a)(2) plaintiff to show that a subcontractor's use of a false statement made to a general contractor resulted in the use of Government funds to pay a false or fraudulent claim.  Id. at 2126.  Disagreeing, the Supreme

Court held, "Under § 3729(a)(2), a defendant must intend that the Government itself pay the claim." Id. at 2128. "What § 2739(a)(2) demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting a 'false or fraudulent claim paid or approved by the government.'" Id. at 2130.

Based on Allison Engine, relator argues that liability attaches immediately upon the making of a false record or statement with the requisite intent, irrespective of whether or not a claim for payment was ever actually submitted to or paid by the government. So, the legal question here is whether a false statement to get a claim paid by the government is actionable in the absence of the presentment of an actual false claim, even by a third party. In Gagne, 565 F.3d at 46 n.7, the First Circuit suggested that the answer to that question might in some circumstances be yes if there is an allegation of a "planned claim." It noted that "the relator must still connect the allegedly fraudulent statement to a planned claim on the government fisc, must show that the defendant intended the statement would have a material effect on the government's decision to pay a claim, and must plead the facts of the fraud with sufficient particularity to satisfy Rule 9(b)." Id. However, this dictum must be read in context. In Gagne, the First Circuit rejected the relator's claim under subsection

(a)(2), holding that conclusory allegations that defendants' submissions of time sheets to get false claims paid were insufficient under Rule 9(b) "absent more detail about those submissions and their connection to false and fraudulent claims." Id. at 47-48 (emphasis added).

To complicate the legal analysis further, Congress recently revised subsection (a)(2) in response to Allison Engine.  The Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, § 4(a), 123 Stat. 1617, 1621 (now codified at 31 U.S.C. § 3729(a)(1)(B)), amended the provision to cover anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." This new section eliminates the "to get" language and the words "paid or approved by the Government," and seems to suggest that an actual claim is required.  However, it is not clear that the amendment applies here.  FERA's Section 4(f)(1) provides that this change "shall take effect as if enacted on June 7, 2009 [two days after the Supreme Court decided Allison Engine], and apply to all claims under the False Claims Act . . . that are pending on or after that date."  Id. at 1625 (emphasis added).

While none of the parties has asked the Court to apply the amended language, in this context, the term "claims" in the retroactivity clause is a paragon of ambiguity.  Does it mean "claims" for payment pending on the date of enactment or to "claims" brought under the False Claims Act in cases pending on

-13-

that date?  Not surprisingly, courts have split on the subject. Some have held that "claims" means claims for payment as defined by the act.  See United States ex rel. Sanders v. Allison Engine Co., 667 F. Supp. 2d 747, 751-52 (S.D. Ohio 2009); United States v. Sci. Apps. Int'l Corp., 653 F. Supp. 2d 87, 106-07 (D.D.C. 2009); United States v. Aquillon, 628 F. Supp. 2d 542, 549-51 (D. Del. 2009).  Others have held that "claims" means the cause of action arising under the FCA.  United States ex rel. Westrick v. Second Chance Body Armor, Inc., No. 04-280, 2010 WL 623466, at *7 (D.D.C. Feb. 23, 2010) ("Because this suit was pending on June 7, 2008, the amended provision applies here."); United States ex rel. Stephens v. Tissue Sci. Labs., 664 F. Supp. 2d 1310, 1315 n.2 (N.D. Ga. 2009) ("Because this action was pending on June 7, 2008, the amended § 3729(a)(1)(B) applies to this action.").

Regardless of how the retroactivity argument is resolved, the new amendments add weight to the argument that Congress intended there to be no FCA liability for a false statement unless there is an allegation that it is "material to a false claim."  See Folliard, 2010 WL 1541224, at *12 (concluding that FERA did not eliminate "the need to allege and prove the existence of a claim").  In other words, posting a false statement on a website in the expectation that a claim will be submitted does not trigger liability without pleading a claim or a "planned" claim.  At best, relator relies on the theory that a listing of a product for sale on a website is sufficient to

-14-

constitute a "planned claim," even if no claim ever materializes. The government has not urged this interpretation, and relator cites no caselaw to support it.  The Court declines to interpret the words "planned claim" used in Gagne so broadly as to hold a defendant liable under the FCA for a false statement without allegations of a specific planned false claim.

**C.   With or Without Prejudice**

Relator urges the Court to allow him to amend the complaint if it is defective and has submitted a declaration to provide greater particularity to the allegations he could re-plead if allowed to do so.  As he stated at the hearing, however, after three years and a government investigation, he still cannot allege that any specific claim was planned or submitted for a product listed on the GSA Advantage! website with a false country of origin.  In the absence of such facts, permitting leave to amend his claim again would be futile.  The First Amended Complaint is dismissed with prejudice.

### ORDER

Defendants' Motions To Dismiss [Docket Nos. 59, 98, 101, 104, 118, 122, 125, 152, 159] are **ALLOWED**.


 /s/ PATTI B. SARIS
 PATTI B. SARIS
 United States District Judge